# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMES EUGENE HOTCHKISS, <br> # B-81014, <br><br> Plaintiff, <br><br> vs. <br><br> TAMMY PITTAYATHIKHAN, <br><br> Defendant. | Case No. 17-cv-887-JPG |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff was incarcerated at Shawnee Correctional Center ("Shawnee") at the time he brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. He has since been released from custody. (Docs. 8, 9). Plaintiff claims that Defendant was deliberately indifferent to a serious medical condition. This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A.[1]

Under § 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). The Court must dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers

---

[1] Although Plaintiff is no longer incarcerated, the pre-screening requirement of § 1915A, which is part of the Prison Litigation Reform Act ("PLRA"), still applies. The determination of a plaintiff's status as a prisoner or non-prisoner, and thus the applicability of the PLRA, must be made as of the date the lawsuit is brought. *Kerr v. Puckett*, 138 F.3d 321, 323 (7th Cir. 1998).

1

to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed. *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Applying these standards, the Court finds that some of Plaintiff's claims survive threshold review under § 1915A.

## The Complaint

Plaintiff's Complaint consists of a court-provided form (Doc. 1), another document entitled "Briefing for Petition/Complaint" (Doc. 1-1), and another labeled "Petition and/or Complaint" (Doc. 1-2). The factual allegations supporting his claims are contained in Docs. 1-1 and 1-2; much of the content of those 2 documents is duplicative.

Plaintiff's medical deliberate indifference claims are based on events between November

14, 2016, and approximately June 5, 2017. (Doc. 1, p. 5; Doc. 1-2, pp. 1-2). He sought medical attention for red spots which appeared to be a rash on both feet and ankles. On November 17, 2016, Pittayathikhan (a nurse practitioner) prescribed a 1% silver sulfadiazine cream for Plaintiff to apply to the affected area for 30 days. (Doc. 1-1, p. 2; Doc. 1-2, pp. 1-3). Plaintiff was called to the medical unit to receive the medication each day from November 17 to November 30, 2016. Despite this treatment, the spots continued to spread up his legs to above his knees. (Doc. 1-2, pp. 3, 6). Plaintiff noticed that the medication label stated it was used for burns; as Plaintiff did not have a burn, he claims that Pittayathikhan wrongly prescribed this medication. (Doc. 1-1, pp. 1-3; Doc. 1-2, p. 4). Plaintiff had formerly suffered ulcers on the same areas of his feet and speculates the spots could have been related to that condition. (Doc. 1-2, pp. 4-6).

Pittayathikhan discontinued the silver sulfadiazine. (Doc. 1-1, p. 2). She ordered a blood test for Plaintiff, performed on December 3, 2016. (Doc. 1-1, p. 3; Doc. 1-2, p. 7). She then ordered a biopsy, performed on either December 13 or December 23, 2016,[2] for which the results were expected to take 14 days. (Doc. 1-1, pp. 3-4; Doc. 1-2, pp. 7-8). Meanwhile, Plaintiff had not been given any other medication since November 30, 2016. (Doc. 1-2, p. 8). On December 27, 2016, Plaintiff asked for some cream to put on the rash, but received nothing. *Id.*

On January 13, 2017, Pittayathikhan told Plaintiff that the biopsy results showed the rash was caused by an allergic reaction to something. (Doc. 1-1, p. 4). Five days later, Pittayathikhan gave Plaintiff Triamcinolone Acetonide 0.1% cream to use for 2 weeks, and hydrocortisone to use for 1 month. *Id.*; (Doc. 1-2, p. 9). The Triamcinolone helped Plaintiff's condition to some extent, but it ran out after 1 week. (Doc. 1-1, pp. 4, 6; Doc. 1-2, pp. 10-11, 13). Instead of

---

[2] Doc. 1-1 gives the date of the biopsy as December 13 (Doc. 1-1, p. 4); Doc. 1-2 states it was performed on December 23, 2016. (Doc. 1-2, p. 8).

3

issuing Plaintiff a refill, Pittayathikhan told him to start using the hydrocortisone. (Doc. 1-1, p. 6; Doc. 1-2, p. 10). On January 27, 2017, Plaintiff asked for a referral to another provider because the problem had not improved. (Doc. 1-1, p. 4). Pittayathikhan told him she was ordering a stronger medication, but in the meantime he should use Fluocinonide cream and Vitamin A & D ointment. (Doc. 1-1, pp. 6-7; Doc. 1-2, pp. 11-12). That treatment, which Plaintiff tried for 8 days, was ineffective, and the rash continued to spread. *Id.*

On February 8, 2017, Plaintiff had another blood test ordered by Pittayathikhan. (Doc. 1-1, p. 5; Doc. 1-2, p. 12). As a result, she prescribed thyroid medication (Levothyroxine 25 mg) for Plaintiff on February 14, 2017. (Doc. 1-2, p. 13). Plaintiff complains that the thyroid condition should have been detected with the blood test on December 3, 2016, and Pittayathikhan should have ordered another blood test and/or prescribed medication sooner. (Doc. 1-1, p. 5; Doc. 1-2, pp. 12-13, 26). Later on in May 2017, Plaintiff had another blood test and saw Dr. David for follow-up treatment of his thyroid condition. (Doc. 1-1, p. 8; Doc. 1-2, p. 28). The doctor increased the dosage of Plaintiff's thyroid medication. *Id.*

In early or mid-February, Pittayathikhan tried another medication for the rash (Triamcinolone 15 gm 0.1% ointment), which Plaintiff used for 3 days without any improvement. (Doc. 1-1, p. 7; Doc. 1-2, p. 13). Then on approximately February 17, 2017, she put Plaintiff back on the "correct" medication (Triamcinolone Acetonide 0.1% cream). (Doc. 1-2, pp. 13-14). Plaintiff's supply lasted until about March 17, 2017, when he notified Pittayathikhan that he was out. (Doc. 1-2, p. 14). During the time he was on this medication, he ran out several times and had to go without it until Pittayathikhan issued him a refill. Each time the treatment was interrupted, the rash worsened. (Doc. 1-2, pp. 15-16, 22). It eventually spread all over his body, including his legs, arms, and face. (Doc. 1-2, p. 36). He complains that

Pittayathikhan failed to call him back to assess the effectiveness of the treatment over a period of months, and asserts that the entire course of her ineffective treatment of his rash violated his rights. (Doc. 1-2, pp. 16, 34, 36).

On May 5, 2017, Plaintiff decided to investigate the possible cause of his allergic reaction. He changed brands of soap and shampoo several times with no effect on the rash. (Doc. 1-1, p. 9; Doc. 1-2, p. 32). When he changed his laundry detergent, he found that his spots/rash went away. He charges Pittayathikhan with deliberate indifference for failing to investigate or diagnose the cause of the allergic reaction, and instead using a course of treatment that was not effective. (Doc. 1-1, pp. 9, 11; Doc. 1-2, p. 33). He wants compensation for his pain, suffering, and the permanent scars that resulted from the rash. (Doc. 1, pp. 7-8, 13, 15; Doc. 1-2, pp. 36, 38).

## Merits Review Pursuant to 28 U.S.C. § 1915A

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into the following counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit. Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice.

> **Count 1:** Eighth Amendment deliberate indifference claim against Pittayathikhan, for discontinuing medication (Triamcinolone Acetonide 0.1% cream) that gave some relief for Plaintiff's rash, failing to provide timely refills of that medication after it was re-prescribed, and failing to examine Plaintiff on a regular basis to evaluate the effectiveness of the rash treatment over the course of several months;
>
> **Count 2:** Eighth Amendment deliberate indifference claim against Pittayathikhan, for failing to properly diagnose the cause of Plaintiff's rash, persisting in using ineffective medications to treat it, and failing to discover or

5

attempt to discover the cause of Plaintiff's allergic reaction;

**Count 3:** Eighth Amendment deliberate indifference claim against Pittayathikhan, for failing to test for or diagnose Plaintiff's thyroid problems earlier, and delaying putting him on medications for the thyroid condition.

Count 1 shall proceed for further consideration. Counts 2 and 3 shall be dismissed without prejudice for failure to state a claim upon which relief may be granted.

### Deliberate Indifference to Serious Medical Needs

In order to state a claim for deliberate indifference to a serious medical need, an inmate must show that he (1) suffered from an objectively serious medical condition; and (2) that the defendant was deliberately indifferent to a risk of serious harm from that condition. An objectively serious condition includes an ailment that significantly affects an individual's daily activities or which involves chronic and substantial pain. *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). "Deliberate indifference is proven by demonstrating that a prison official knows of a substantial risk of harm to an inmate and either acts or fails to act in disregard of that risk. Delaying treatment may constitute deliberate indifference if such delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (internal citations and quotations omitted). *See also Farmer v. Brennan*, 511 U.S. 825, 842 (1994); *Perez v. Fenoglio*, 792 F.3d 768, 777-78 (7th Cir. 2015).

The Eighth Amendment does not give prisoners entitlement to "demand specific care" or "the best care possible," but only requires "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Further, a defendant's inadvertent error, negligence or even ordinary malpractice is insufficient to rise to the level of an Eighth Amendment constitutional violation. *See Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008).

6

Here, Plaintiff's persistent rash presented a condition that required medical attention. At this stage, the Complaint satisfies the objective component of an Eighth Amendment claim. The remaining question is whether the Defendant acted or failed to act with deliberate indifference to a known risk of serious harm. Some of Pittayathikhan's conduct described in the Complaint may support a deliberate indifference claim. However, a number of Plaintiff's claims against her do not rise to the level of a constitutional violation.

**Count 1 – Failure to Provide Consistent Medication or Follow-up for Rash**

In reviewing the entire course of Plaintiff's treatment by Pittayathikhan between November 2016 and May 2017, it is apparent that (at least during the earlier part of Plaintiff's treatment) she made continued attempts to find an effective treatment for Plaintiff's condition. This included prescribing at least 4 different topical medications for the rash, and ordering 2 blood tests and a biopsy in order to determine the cause of Plaintiff's rash and which medications to use. While Plaintiff expresses dissatisfaction with the length of time needed to accomplish those tests and obtain results and with Pittayathikhan's medical judgment, his account of the tests ordered and medication prescribed by Pittayathikhan between November 17, 2016, and mid-February 2017, for the most part does not suggest undue delay or deliberate indifference.

A possible exception was when Pittayathikhan first prescribed the Triamcinolone Acetonide 0.1% cream in January 2017, and instructed Plaintiff to use it for 2 weeks. However, she gave him only a 1-week supply of the cream, and declined to refill it when Plaintiff told her it ran out. Plaintiff states that the cream had helped his condition, but the hydrocortisone Pittayathikhan told him to use next did not help. Pittayathikhan's decision to discontinue the helpful medication at that time could support a deliberate indifference claim, if she was aware that the cream had given Plaintiff effective relief. On the other hand, her decision to try other

7

medications (including a "stronger" one that she ordered in late January) indicates efforts to find treatment that would provide relief from his condition, which defeats a deliberate indifference claim. More facts will be required in order to determine whether these actions indicate deliberate indifference, or fall within the realm of reasonable treatment (or negligence/malpractice, which does not equate to deliberate indifference). At this stage, the portion of Plaintiff's claim based on these facts may proceed under **Count 1.**

Later on, around February 17, 2017, Pittayathikhan put Plaintiff back on the medication which seemed to provide him with the greatest relief (Triamcinolone Acetonide 0.1% cream). However, Plaintiff states that the medication ran out on several occasions including on March 17, 2017. Despite informing Pittayathikhan of the problem, Plaintiff was unable to get a reliable and uninterrupted supply of the medication from her. As a result, he claims the rash became worse while he was without the cream, and it was like starting treatment all over again when he finally obtained the medication. This sequence of events may support a deliberate indifference claim, therefore this portion of the claim may also proceed.

Finally, Plaintiff asserts that Pittayathikhan did not personally examine him to evaluate his condition after approximately mid-January 2017. He believes that she could not effectively treat his condition without conducting follow-up examination(s) to see how or whether his rash had changed. She apparently continued Plaintiff on the same treatment (with some interruptions) between February and May or June 2017 without seeing him again. During that time, Plaintiff admits he got some relief from the rash as a result of the prescribed cream, but he also says the rash did not go away and in fact spread to other parts of his body. It appears that Plaintiff submitted requests for an appointment with Pittayathikhan during that time, but she did not see him. Her failure to examine Plaintiff for that period is somewhat suggestive of deliberate

indifference. However, additional factual development will be necessary to resolve the issue. This portion of Plaintiff's deliberate indifference claim may also proceed in **Count 1.**

### Dismissal of Count 2 – Failure to Diagnose or Find Effective Medication

Plaintiff seeks damages from Pittayathikhan based on her use of a medication for burns to treat his rash, as well as her decision to prescribe other medications which proved to be ineffective to relieve his symptoms. The fact that the silver sulfadiazine cream was recommended for burns does not necessarily make it inappropriate for a rash, and does not constitute deliberate indifference. A provider's medical judgment is entitled to deference by the courts, so long as it does not constitute recklessness, or suggest a treatment decision that falls far afield of accepted professional medical judgment. *Sain v. Wood*, 512 F.3d 886, 894-95 (7th Cir. 2009). *See also Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003) (courts will not take sides in disagreements with medical personnel's judgments or techniques). Further, the assertion that Pittayathikhan should be legally liable for prescribing treatment(s) that proved to be ineffective does not state a viable claim for deliberate indifference. *See Duckworth v. Ahmad*, 532 F.3d 675, 680 (7th Cir. 2008).

Likewise, Pittayathikhan's failure to initially diagnose Plaintiff's rash as an allergic reaction, and her failure to investigate or discover the substance that triggered the allergic reaction, do not amount to deliberate indifference. Again, Pittayathikhan took reasonable measures (blood tests and a biopsy) to diagnose Plaintiff's symptoms, and she made continuing attempts over approximately 3 months to find medication that would relieve Plaintiff's symptoms. These efforts are the opposite of deliberate indifference to a medical problem, and represent "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Plaintiff's expectation that Pittayathikhan should have gone

further to investigate the exact cause of the allergic reaction crosses the line into demanding "specific care" or "the best care possible," which is not mandated by the Eighth Amendment. *Id.* Plaintiff's own experience with eliminating the possible triggers for his allergic reaction demonstrates the difficulty and time-consuming nature of such an effort. He cannot expect a prison medical provider to undertake such measures on his behalf, especially when he has been prescribed treatment which he admits had a positive effect on his symptoms.

For these reasons, the complaints in Count 2 fail to state a deliberate indifference claim upon which relief may be granted. **Count 2** shall be dismissed without prejudice.

**Dismissal of Count 3 – Delayed Diagnosis and Treatment for Thyroid Condition**

Finally, Plaintiff asserts that Pittayathikhan should have diagnosed his thyroid problem based on the December 3, 2016, blood test, should have prescribed thyroid medication for him sooner, and should not have waited until February 8, 2017, to order another test when she suspected thyroid issues. These matters also fail to state a claim upon which relief may be granted, in light of the factual allegations in the Complaint.

Up until the time Plaintiff received the thyroid medication prescription from Pittayathikhan on February 14, 2017, he does not describe a single symptom indicating he may have had a thyroid condition. The Complaint does not indicate that Plaintiff asked for treatment or tests for his thyroid function but was denied. He provides no facts to indicate that Pittayathikhan ignored the problem or should have been alerted to the thyroid issue at an earlier point. Indeed, if she had misdiagnosed Plaintiff or overlooked blood test results through negligence or malpractice, such conduct would not amount to a constitutional violation. *See Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008). The facts set forth in the Complaint do not indicate that Pittayathikhan was deliberately indifferent to Plaintiff's thyroid condition.

**Count 3** shall therefore be dismissed without prejudice.

### Pending Motion

Plaintiff's motion for recruitment of counsel (Doc. 3) shall be referred to the United States Magistrate Judge for further consideration.

### Filing Fee

On September 5, 2017, Plaintiff was assessed an initial partial filing fee of $3.17 when his motion for leave to proceed *in forma pauperis* ("IFP") was approved. (Doc. 6). By the time a copy of that payment order reached the prison on approximately September 11, 2017, Plaintiff had apparently been released, because the envelope was returned to the Clerk of Court as undeliverable. (Doc. 7). Plaintiff has not yet made this initial payment.

Because Plaintiff was a prisoner when he filed this action, he is required under the PLRA to pay the entire $350.00 filing fee, in accordance with 28 U.S.C. § 1915(b)(1). That statute provides: "if a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner shall be required to pay the full amount of a filing fee." *See also Robbins v. Switzer*, 104 F.3d 895, 897 (7th Cir. 1997). Section 1915(b)(1) further establishes that a prisoner must *pre*pay the filing fee in accordance with a statutory schedule based upon transactions in his inmate trust fund account. Plaintiff's current released status does not change the fact that he was a prisoner when he filed this action. *See Robbins*, 104 F.3d at 898. He "is liable for the whole fee (just like everyone else who proceeds IFP), and must prepay according to the statutory schedule." *Id*.

Plaintiff's initial partial fee payment of $3.17 was calculated based on the transactions in his prisoner trust fund account during the 6 months before he filed this action. Accordingly, Plaintiff is **ORDERED** to pay the initial partial filing fee, in the amount of **$3.17,** within **21 DAYS** of the entry of this Order (**on or before December 7, 2017**). This payment shall be

mailed to: Clerk of the Court, United States District Court for the Southern District of Illinois, P.O. Box 249, East St. Louis, Illinois 62202. If Plaintiff fails to pay this partial fee within the time allotted, this action shall be dismissed under Federal Rule of Civil Procedure 41(b), unless Plaintiff demonstrates that he is not presently able to pay that amount. *See generally Robbins*, 104 F.3d at 897-98 (because the money was in the plaintiff's prison account when he filed suit, dismissal for failure to adhere to the statutory scheme does not violate § 1915(b)(4), which provides that a case may continue even if the prisoner is unable to pay anything).

While Plaintiff remains obligated to pay the full filing fee, the collection mechanism contained in § 1915(b)(2) is inapplicable because Plaintiff is no longer incarcerated. In order to enable the Court to evaluate Plaintiff's current resources and determine whether to defer collection of the remainder of the unpaid fee, **Plaintiff is ORDERED** to submit a new motion for IFP **within 21 days** of the entry of this Order (**on or before December 7, 2017**). The Clerk is **DIRECTED** to mail Plaintiff a blank form motion and affidavit to proceed without prepaying fees or costs.

**Plaintiff is further ORDERED** to inform this Court if he is returned to the custody of the Illinois Department of Corrections, or to any county or municipal jail, by filing a notice of change of address **within 7 days** of entering such custody. Should Plaintiff be incarcerated in the future, the collection mechanism established under § 1915(b)(2) shall apply to the payment obligation that Plaintiff incurred by filing this action.

## Disposition

**COUNTS 2 and 3** are **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.

The Clerk of Court shall prepare for Defendant **PITTAYATHIKHAN**: (1) Form 5

(Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to Defendant's place of employment as identified by Plaintiff. If Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If the Defendant cannot be found at the address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file, nor disclosed by the Clerk.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings, which shall include a determination on the pending motion for recruitment of counsel (Doc. 3).

Further, this entire matter shall be **REFERRED** to the United States Magistrate Judge for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: November 15, 2017**

*s/J. Phil Gilbert*
United States District Judge
